UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 18-1822 JGB (GJS) | Date | October 4, 2018 |
|---|---|---|---|
| Title | *Arogant Hollywood, et al. v. Public Storage, Inc, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order DENYING Plaintiffs' Second Ex Parte Application for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 25) (IN CHAMBERS)

Before the Court is the Second Ex Parte Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction filed by Plaintiffs Arogant Hollywood and Alison Helen Fairchild ("Plaintiffs"). (Dkt. No. 25, "Application.") After considering all papers submitted in support of and in opposition [Dkt. 27] to the Application, the Court DENIES the Application.

## I.   BACKGROUND

On August 28, 2018, Plaintiffs, proceeding pro se, filed a civil complaint in this Court. ("Complaint," Dkt. No. 1.) The Complaint, which runs for over 190 pages and includes 22 causes of action and 64 demands for relief, makes numerous accusations of civil rights violations and discrimination, which the Court need not enumerate or address here. In brief, the Complaint stems from a series of alleged conflicts between Plaintiffs and employees of the Public Storage facility located at 5548 Arrow Highway, Montclair, California, 91764 (the "Montclair Facility"). Based on the record currently before the Court, it appears that on May 19, 2018, an individual named Cheryl Kaylor rented Space #279 of the Montclair Facility, and on June 11, 2018, Plaintiff Arogant Hollywood rented Space # 287. (Dkt. No. 17 at #444; Dkt. No. 25-4 at #630.)  Relations between Plaintiffs and Public Storage appear to have deteriorated quickly.  Plaintiffs allege that, following altercations between Plaintiff Hollywood and another tenant regarding a handicapped parking spot and sign on June 15 and 16, 2018, employees of Public Storage informed Plaintiffs that they intended to terminate Hollywood's lease and called police to escort them off the premises.  (Complaint ¶¶ 37-49.)  Plaintiffs claim that, following additional disputes with staff

during visits to the Montclair Facility on June 17 and 18, 2018, Public Storage took steps to deny Plaintiffs access to Spaces # 279 and #287, including, on June 21, 2018, cancelling Plaintiffs' gate-access codes and overlocking the doors to Spaces # 279 and #287.  (Complaint ¶¶ 37-63; 74.)  On June 29, 2018, the San Bernardino County Superior Court issued a Temporary Restraining Order ordering Plaintiff Hollywood to stay at least 100 yards away from three employees of the Montclair Facility and their workplace.  (Dkt. No. 27-1 at ##728-733.)  On August 9, 2018, the same court issued a Workplace Violence Restraining Order, effective until August 9, 2021, ordering Plaintiff Hollywood to stay at last 100 yards away from those employees and the Montclair Facility.  (Dkt. No. 27-1 at ##735-740.)[1]

On September 2, 2018, Plaintiffs filed an ex parte application for a temporary restraining order and preliminary injunction enjoining the auction of their property currently stored in Spaces #279 and #287 of the Montclair Facility. (Dkt. No. 17.)  On September 4, 2018, Defendant Public Storage filed an opposition to Plaintiffs' application. (Dkt. Nos. 18-20.)  On September 5, 2018, Plaintiffs filed a declaration in support of the application (Dkt. No. 21), as well as a request to withdraw the application (Dkt. No. 22).  On September 6, 2018, United States Magistrate Judge Gail J. Standish granted that request and the application was withdrawn. (Dkt. No. 23.)

Approximately three weeks later, Plaintiffs filed the instant Application.  They allege, in pertinent part, as follows.  Plaintiff Fairchild does not have a rental agreement with the Montclair Facility but, rather, is an "authorized person" on the rental agreement that Cheryl Kaylor signed. (Application at 545.)[2]  On June 21, 2018, Defendants overlocked Spaces #279 and #287.  On June 24, 2018, Plaintiff Hollywood photographed copies of "For Cause Termination Letters" taped to the doors of Spaces #279 and #287.  (Application at 553, 584, 598-599, Ex. 1.)  Because of the issuance of the above-noted Restraining Order against Plaintiff Hollywood, neither he nor Plaintiff Fairchild (because she requires Hollywood's physical assistance) have been able to access their property stored in these two storage units since June 27, 2018.  (Application at ##546-547.)

Plaintiffs assert that they are suffering irreparable injury, because "everything they own" is contained within Space #279 and Space #287.  Plaintiffs complain that Defendants have not yet initiated state court eviction proceedings against them with respect to Spaces #279 and #287

---

[1] On September 6, 2018, Judge Ochoa of the San Bernardino Superior Court issuing an Order barring Plaintiff Hollywood from entering the Judge's Courtroom unless Hollywood had a court hearing at a specific date and time, for the stated reason that "Hollywood has caused multiple disturbances when dealing with courtroom staff."  (Dkt. 27-1 at #742.)

[2] The copy of the May 19, 2018 contract signed by Kaylor produced by Plaintiffs shows that Plaintiff Hollywood, and *not* Plaintiff Fairchild, is listed as the sole authorized access person for Space #279 in addition to Kaylor.  (Application at ##630-634.)

despite advising the state court in June 2018, that they would do so.[3] Plaintiffs speculate that this is because Defendants desire to sell and dispose of Plaintiffs' property illegally, as evidenced by the prior listing of the two storage units on an auction site and recent statements by defense counsel indicating he would seek to compel arbitration and/or file an anti-SLAPP motion. (Application at 567-569.)  Thus, Plaintiffs reason, they are entitled to immediate relief from this Court preventing Defendants from denying Plaintiffs access to Space # 279 and Space # 287. They ask for a temporary restraining order permitting them to make payments for Spaces # 279 and #287 and permitting them immediate, unfettered access to both storage units once such payments are made. (Application at #694-695.)

## II.    LEGAL STANDARD

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The possibility of irreparable injury is an insufficient basis for injunctive relief; rather, a movant must show that irreparable injury is likely absent the issuance of an injunction.  Id. at 22.  In addition, the movant must demonstrate immediate threatened harm.  Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon, 254 F.3d 846, 850-51 (9th Cir. 2001).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted).

## III.    DISCUSSION

The Court need not address the first, third, and fourth prongs of the Winter test, because it is plain that the irreparable injury requirement for injunctive relief is not satisfied here, particularly as to any temporary restraining order relief.  Although Plaintiffs complain at length about having been denied access to their property contained in Space #279 and Space #287 since late June 2018, they waited three months before filing the instant Application – a delay that hardly bespeaks of the immediacy required to find that a TRO is warranted.  Plaintiffs have not proffered any evidence giving rise to "temporal urgency such that immediate and irreparable harm will occur if there is any delay in obtaining relief."  Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 490 (C.D. Cal. 1995.)

---

[3]    In fact, Defendant Public Storage filed an unlawful detainer action against Plaintiff Hollywood on September 27, 2018, in San Bernardino County Superior Court Case No. UDFS1806212.  (Dkt. No. 27-1 at ##789-791.)

      Plaintiffs would have the Court grant them immediate access to Spaces #287 and #279 and cease blocking Plaintiffs from making monetary payments for their storage units.  There is no factual basis of record, however, to support finding that such an order is necessary to prevent irreparable harm.  Indeed, the record demonstrates that any such relief would be baseless and improper.  Given that Plaintiff Hollywood currently is subject to a Workplace Violence Restraining Order requiring him to stay at least 100 yards away from the facility, Plaintiffs effectively are asking the Court to overturn an extant state court order.  If Plaintiffs believe that state court order is wrongful, they should pursue their state court appeal remedies; asking a federal court to issue extraordinary relief so as to allow them to evade it is improper.

      In any event, as Plaintiffs concede, counsel for Defendants Public Storage has advised them that, if they provide 24 hours' notice to him, they will be allowed into the Montclair Facility and permitted to retrieve their property from Space # 279 and Space # 287 during regular business hours, i.e., from 9:30 a.m. to 6:00 p.m. (Application at 556-557, 588, Ex. 2.  See also Dkt. No. 18 at 496 (defense counsel's representation that Public Storage will permit Plaintiffs to retrieve their property from the Montclair Facility during normal business hours and upon adequate notice; Dkt. No. 27 at 707-708 (same); Dkt. No. 27-2 at 821.)  Plaintiffs, however, have never sent a written request to defense counsel seeking access to their property in the storage units.  ("Declaration of John Walker," Dkt. 27-2, ¶ 3.)  Plaintiffs do not contend that they are unable to provide such notice or go to the Montclair Facility during this eight and a half hour time span.  It appears, instead, that they simply do not want to do so.  There can be no finding of irreparable injury under these circumstances, as Plaintiffs' asserted harm is self-inflicted.  That they have chosen not to utilize the remedy afforded to them – accessing their property during business hours after providing defense counsel with notice – allegedly because defense counsel's e-mail advice of this procedure caused them "great distress" (Application at 557), does not give rise to any basis for this Court to issue extraordinary and drastic relief.  It certainly belies any finding that an emergency exists that warrants the issuance of an extraordinary remedy.  When, as here, Plaintiffs have an adequate remedy but do not want to use it, their assertions that they will suffer irreparable injury not only ring hollow but are frivolous.

      Even if, as Plaintiffs claim, they were unable to access their property contained in Space # 279 and Space # 287 of the Montclair Facility once the storage units were overlocked in late June 2018, Defendants subsequently agreed to allow Plaintiffs to obtain access to, and remove, their property.  Plaintiffs have elected not to exercise that available remedy.  The Application is predicated on a purported circumstance that is untrue, namely, that Plaintiffs are suffering irreparable injury because Defendants presently are precluding them from accessing and retrieving their property contained in Space # 279 and Space # 287 at the Montclair Facility.  Accordingly, the Court finds that ex parte relief in the nature of a TRO, as well as injunctive relief in general, is not justified.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Application.

**IT IS SO ORDERED.**